IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DESMOND MICHAEL MORELAND,

    Plaintiff,                       No. CIV S-10-2701 GGH P

    vs.

TIM VIRGA, Warden,

    Defendant.                 ORDER

_____/

        Petitioner/plaintiff is a state prisoner proceeding pro se.  Although petitioner/plaintiff filed his complaint on a habeas petition form, it must be re-designated, for the reasons set forth below, as an action pursuant to 42 U.S.C. § 1983.  Moreover, the court cannot rule at this time on whether or not plaintiff might be entitled to in forma pauperis status pursuant to 28 U.S.C. § 1915 for two reasons.  The first reason is because petitioner/plaintiff has failed to file an in forma pauperis affidavit altogether or to pay the required filing fee.  See 28 U.S.C. §§ 1914(a), 1915(a). He will be provided the opportunity either to submit the appropriate affidavit in support of a request to proceed in forma pauperis or to submit the appropriate filing fee.  Two, there is a significant difference between the statutory filing fee for a civil rights action, which is $350.00, and the filing fee for the habeas petition plaintiff evidently believed he was filing as a petitioner, which is $5.00.  Petitioner/plaintiff will be provided another opportunity to

submit a fully completed application to proceed in forma pauperis, should he choose to proceed in this action or, of course, to pay the $350 filing fee in full. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Petitioner/plaintiff has consented to the jurisdiction of the undersigned. See signed consent form, filed on October 19, 2010, docket # 4.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at

2

570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

This action must be re-designated as a civil rights action because plaintiff herein is challenging a condition of confinement and not the duration of his sentence:

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. 1979, as amended, 42 U.S.C. 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a § 1983 action.

Muhammad v. Close, 540 U.S.749, 750, 124 S.Ct. 1303, 1304 (2004) (per curiam).

Within his putative petition, petitioner/plaintiff does not challenge the constitutionality of his underlying conviction or sentence, a particular parole decision or a prison disciplinary conviction; instead, he contends that his prison records do not reflect his correct identity and that prison officials are creating a serious threat to himself and prison security by not correcting the false identity under which he is incarcerated. Petition (hereafter, Complaint), pp. 4, 16, 37, 40-54. Petitioner (hereafter, plaintiff) contends there is a real threat to his safety because his actual criminal activities have not been accounted for by CDCR and he "is a well noted organized crime figure in both Los Angeles and Las Vegas." Id. at 41. His false identification subjects him to serious risk of harm from people in prison who know, or know of, his real identity. Id. at 46-47. Plaintiff also claims that prison investigators are fully aware that

3

1 prison doctors have "intentionally diagnosed" plaintiff as "'delusional'" for the purpose of
2 keeping him from being "a material witness" in the Nevada O.J. Simpson criminal trial. Id. at 5,
3 16, 37.[1]
4          Specifically, plaintiff claims that in 2001, he was documented at Calipatria State
5 Prison as a 32-year-old black first timer sentenced to a term of 32-years-to-life. Complaint, p.
6 22. Plaintiff, however, asserts that he is a "second timer" with a prior CDC number of H-11588.
7 Id. at n. 6. In 2008, plaintiff alleges that his length of incarceration was noted as being life
8 without possibility of parole. Id. at 22. Plaintiff goes into some detail as to different
9 psychologists' assessment of his mental condition, noting there was some disagreement among
10 them as to whether he was delusional or not and stating that his real life of having organized
11 crime ties (being a crime boss), involvement with the Simpson criminal matter, education at
12 Purdue University, selection in the 1988 supplemental National Football League Draft and
13 service in the U.S. Army, should not result in his being considered possibly delusional just
14 because his life is "'both amazing and bizarre when compared to life of doctors evaluating
15 him....'" Id. at 23-28. Plaintiff alleges he was involuntarily included in the CDCR MHSDS[2] and
16 scheduled for involuntary transfer to a medical institution from which he unsuccessfully
17 appealed. Id. at 24-26. After his medical transfer from Centinela to Folsom State Prison (FSP),
18 he filed an appeal stating he has involuntarily included in the MHSDS program and had received
19 no mental health treatment at FSP, although he avers that he is not delusional and needs no
20 treatment. Id. at 26. Plaintiff notes that he was in administrative segregation (Ad Seg) at FSP for
21 having beaten a cellmate with a broken broom handle after he caught the cellmate going through
22 plaintiff's legal paperwork. Id. at 28, n. 13. Plaintiff's licensed clinical social worker at FSP,

---

[1] Plaintiff also evidently told a Dr. T. Gabriel, who assessed plaintiff as "'possibly delusional,'" among other things, that he was concerned that he had left a "'couple grenades'" at a Las Vegas high school where he had been a football coach from 1995 through 1997. Id. at 24.

[2] California Department of Corrections and Rehabilitation Mental Health Services Delivery System. Complaint, p. 23.

Ms. Michau, to whom he was assigned on July 24, 2009, was provided greater detail about his true identity than anyone else and, according to plaintiff, discovered on the internet that plaintiff's birthday was actually 2/3/67 and not 2/3/72. Id. at 27-28. She also evidently found his information about attending Purdue credible. Id. at 28.

Plaintiff then opened up about his true identity to the FSP Internal Investigative Services (ISU), Captain Johnson, Lieutenant Langford and Sergeant Packard, that he was incarcerated under an incorrect birthdate, false name and social security number, and criminal history background and that the information about him in his CDCR central file (C-file) is wrong. Complaint, pp. 28-29. Plaintiff credits Ms. Michau with saving his sanity and possibly his life. Id. at 30. In an emergency appeal dated September 2, 2009, plaintiff claimed to have direct information about an unsolved homicide and kidnapping, claiming his immediate family members were "'at risk of being murdered.'" Id. at 31.[3] Plaintiff's appeal was granted but he was only referred to FSP ISU and not the state police, who have jurisdiction over such a matter. Id. & n. 18. Plaintiff complained in a grievance that his incarceration under a false identity was causing his "'very serious mental illnesses....'" Id. at 32.

Plaintiff, having been transferred from FSP to California State Prison-Sacramento (CSP-Sac), was told by Lieutenant Langford of FSP ISU that plaintiff's issues had been difficult to contend with and involved matters "over his [Langford's] head," and should be brought before the courts. Complaint, p. 35. On January 8, 2009, Lt. Langford noted in a memorandum to the FSP associate warden that he believed there was sufficient reason to further review plaintiff's birthdate, social security number, etc., but plaintiff has not received any relief to date. Id. at 35-36, 59. Plaintiff primarily seeks declaratory and injunctive relief. Id., at 37-38.

Although plaintiff may be able to articulate colorable Eighth Amendment claims, he has failed to do so sufficiently herein. Moreover, his 127-page filing appears to violate Rule 8

---

[3] Plaintiff claims the unsolved murder occurred on California State University property at Dominguez Hills in Carson, California, where the body is allegedly buried. Id. at 31, n. 18.

5

of the Federal Rules of Civil Procedure. Fed. R. Civ. P 8 sets forth general rules of pleading in the federal courts. Complaints are required to set forth (1) the grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for the relief plaintiff seeks. All that is required are sufficient allegations to put defendants fairly on notice of the claims against them. See Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957) (abrogated on another ground by Bell Atlantic Corp., supra, 550 U.S. 544, 127 S. Ct. 1955); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).

   Plaintiff's allegations regarding erroneous record-keeping by CDCR prison officials does not, on the face of it, implicate a federal constitutional right. "Before plaintiff can assert a federal due process violation, plaintiff must have followed the state procedures for correction of the record." Mazurak v. California Dept. of Justice, 1006 WL 2255514 *6 (E.D. Cal. Aug. 7, 2006).[4] For example, among plaintiff's exhibits is an addendum to a February 8, 2010, first level appeal response, indicating that plaintiff's date of birth is noted as 2/3/1967 (the one apparently plaintiff indicates is correct). Id. at 62. The response also indicates that plaintiff has "several social security numbers" and one discrepancy was noted regarding plaintiff's CII number and a corrected rap sheet was apparently attached. Id. Moreover, the correctional case records analyst signing the addendum states that if plaintiff believes his date of birth is incorrect, he should request a certified copy of his birth certificate be mailed to his counselor. Plaintiff has not indicated this was done. Plaintiff's complaint will be dismissed with leave granted for plaintiff to bring allegations with at least some colorable supporting evidence that his true identity is not reflected in CDCR records and to demonstrate that he has followed the state procedures to correct his record to no avail.

   To the extent plaintiff intends to allege that prison officials have failed to protect

---

[4] August 7, 2006, Findings and Recommendations in Mazurak, supra, Case No. CIV-S03-2114, GEB GGH P, adopted in full by Order, filed on September 20, 2006.

6

him because he is not incarcerated under his correct name subjecting him to the possibility of being attacked by enemies unidentified because plaintiff's own actual identity is not accurately reflected in CDCR records, while the complaint will be dismissed, plaintiff will be granted leave to amend. "'[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'.... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834, 114 S.Ct. at 1977. Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id. The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. at 1979. Should plaintiff seek to amend, he must identify individual defendants against whom he can frame allegations showing he has been subjected to deprivations of his constitutional rights.

If plaintiff intends to proceed on a claim of inadequate medical care for his mental condition or on a claim that he was wrongly deemed to be in need of mental health care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

1    A serious medical need exists if the failure to treat a prisoner's condition could
result in further significant injury or the unnecessary and wanton infliction of pain.  Indications
that a prisoner has a serious need for medical treatment are the following:  the existence of an
injury that a reasonable doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly affects an individual's daily
activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900
F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01
(9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other
grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court
defined a very strict standard which a plaintiff must meet in order to establish "deliberate
indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.
However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm
which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.
Neither is it sufficient that a reasonable person would have known of the risk or that a defendant
should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard –
disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at
1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,
114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk
of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at
847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his
knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was
obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at
1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061. Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). The complaint will be dismissed but plaintiff will be granted leave to amend.

\\\\\

\\\\\

\\\\\

1    To the extent that plaintiff seeks prospective injunctive relief, just as it is not
2  necessary to allege Monell[5] policy grounds when suing a state or municipal official in his or her
3  official capacity for injunctive relief related to a procedure of a state entity, Chaloux v. Killeen,
4  886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to allege the personal involvement
5  of a state official when plaintiffs are attacking a state procedure on federal grounds that relates in
6  some way to the job duties of the named defendant.  All that is required is that the complaint
7  name an official who could appropriately respond to a court order on injunctive relief should one
8  ever be issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v.
9  Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief,
10 as opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983
11 action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).
12 See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit
13 to continue against an official's successors despite objection that the successors had not
14 personally engaged in the same practice that had led to the suit.  However, because a suit against
15 an official in his or her official capacity is a suit against the state, a practice, policy or procedure
16 of the state must be at issue in a claim for official capacity injunctive relief.  Haber v. Melo, 502
17 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991).  Should plaintiff amend his complaint, he must name
18 an official as a defendant who, in his or her official capacity, could appropriately respond to any
19 order from the court should one ever be issued.  In addition, plaintiff must implicate, in any
20 amended complaint, a practice, policy or procedure of the state as resulting in an unconstitutional
21 deprivation of his civil rights.
22    If plaintiff chooses to amend his filing, plaintiff must demonstrate how the
23 conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See
24 Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

---

[5] Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is to re-designate this action as one brought pursuant to 42 U.S.C. § 1983.

2. The Clerk of the Court shall also provide plaintiff with a copy of the in forma pauperis application used by this court for prisoner civil rights actions.

3. Within twenty-eight days of the date of this order, plaintiff shall submit a fully completed in forma pauperis application or the required $350.00 filing fee.

4. The petition, construed as a complaint, is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order.

\\\\\

\\\\\

\\\\\

1        5. Plaintiff's failure to comply with any portion of this order will result in a
2  recommendation of dismissal of this action.
3  DATED: October 29, 2010                          /s/ Gregory G. Hollows

                                                GREGORY G. HOLLOWS
                                                UNITED STATES MAGISTRATE JUDGE

GGH:009
more2701.b