IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DESMOND MICHAEL MORELAND,

      Plaintiff,                    No. CIV S-10-2701 GGH P

   vs.

TIM VIRGA, Warden, et al.,

      Defendants.             ORDER
_____/

      By Order filed on October 29, 2010, plaintiff's filing was re-designated as one brought pursuant to 42 U.S.C. § 1983, and dismissed with leave to amend. In addition, plaintiff, a state prisoner proceeding pro se, was directed either to submit a completed in forma pauperis application or to pay the filing fee in full. See 28 U.S.C. §1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). In the prior order, it was noted that plaintiff had consented to the jurisdiction of the undersigned. See consent form, filed on October 19, 2010, docket # 4.

      Plaintiff has filed an amended complaint and has now submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

      Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28

1

U.S.C. §§ 1914(a), 1915(b)(1). Plaintiff has been without funds for six months and is currently without funds. Accordingly, the court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff is obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments shall be collected and forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

1  v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at
2  570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content
3  that allows the court to draw the reasonable inference that the defendant is liable for the
4  misconduct alleged." Id.
5         In reviewing a complaint under this standard, the court must accept as true the
6  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.
7  738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,
8  and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.
9  1843 (1969).
10         Plaintiff filed a first amended complaint on November 18, 2010 (docket # 6),
11 almost immediately followed by a further amended complaint on November 23, 2010 (docket #
12 10). Because the further amended complaint supersedes the first, the court will designate the
13 amended complaint at docket # 10 as the second amended complaint and screen that one.
14 Plaintiff's second amended complaint consists of 150 pages with allegations naming forty
15 defendants employed at some three different prisons. The gravamen of his allegations consists of
16 a claim that his personal safety has been put at risk for having been wrongly found in need of
17 mental health care; that his due process rights have been violated because he has been the victim
18 of erroneous prison record-keeping; and that prison officials have failed to protect him by not
19 incarcerating him under the correct name, thereby, subjecting him to cruel and unusual
20 punishment. Second Amended Complaint, pp. 2-3.
21         As he did in his original complaint, plaintiff again recounts what he maintains are
22 the actual facts of his life in contrast to his present identity in CDCR records on the sentence he
23 is presently serving: plaintiff claims that his prison records incorrectly add a "Jr." to his name;
24 that his social security number is incorrect and his birthdate is wrongly recorded as 2/3/72 rather
25 than the accurate date of 2/3/67; that he has been previously incarcerated under another CDC[R]
26 inmate number in state prison although his present sentence is noted in his record as his initial

state prison conviction/sentence; that he in fact attended Purdue University, has a record of military service, played college football and was drafted by a professional Canadian football team and was a part of the 1988 supplemental National Football League Draft; that he was to be a material witness in a criminal trial involving O.J. Simpson, none of which is identified with his history in records maintained by CDCR. SAC, pp. 25-27, 31, 45. Plaintiff appears to be most distressed that prison officials do not acknowledge his alleged notorious background as a criminal kingpin from Los Angeles and in Las Vegas, Nevada, going so far as to assert that he has confessed to an unsolved murder simply to be recognized as who he actually is, all to no avail. Id. at 25-26, 49.

   Plaintiff expresses a great deal of frustration with regard to different psychologists' and psychiatrists' assessments of his mental condition; he contends despite showing some of them documentation to prove his identity, he has been diagnosed as delusional simply for identifying himself correctly by at least seven doctors. SAC, pp. 29-30, 37. He claims his doubts about his sanity, brought about by doctors who have found him to be delusional or bipolar because of his insistence upon who he actually is drove him into violent conflicts with his cellmate which resulted in his placement in administrative segregation (Ad Seg) with single cell status at CSP-Centinella. Id. at 31. Plaintiff alleges he was involuntarily included in the CDCR MHSDS[1] and scheduled for involuntary transfer to a medical institution from which he unsuccessfully appealed. Id. at 32-36.

   After his medical transfer from Centinela to Folsom State Prison (FSP), he filed an appeal stating he had been involuntarily included in the MHSDS program at CSP-Cen, but also complaining that he had received no mental health treatment at FSP. SAC, pp. 38-39. Because he began to believe he was being intentionally misdiagnosed by the mental health department, he states that he made a cynical request for mental health treatment and a treatment

---

[1] California Department of Corrections and Rehabilitation Mental Health Services Delivery System. Complaint, p. 23.

4

plan or an explanation for lack of treatment so that he could eventually seek enforcement from the courts. Id. at 39-40. Plaintiff claims that at one point when he returned from the recreation yard to his FSP cell which he shared with a cellmate that a "feeling c[a]me over him" that his cellmate had to be looking through his legal property to help the mental health department continue the diagnosis of him as delusional. Id. at 40-41. While his cellmate slept that night, plaintiff attacked him with a broken broom handle beating him to the point of unconsciousness. Id. at 41.[2]

       Plaintiff's licensed clinical social worker at FSP, Ms. Michau, to whom he was assigned in July, 2009, while housed in Ad Seg for battery upon his cellmate with a weapon, concluded that plaintiff was suffering from depression and anxiety; she discovered on the internet, according to plaintiff, that plaintiff's birthday was actually 2/3/67 and not 2/3/72, and noted that only someone who had attended Purdue, as she had, would know some of the information he had about that institution. SAC, pp. 41-43. Plaintiff cried and felt very relieved that he finally had someone who believed him and believed that without her help he would likely have lost his mind and killed himself. Id. at 43-44.

       Plaintiff then opened up about his true identity to the FSP Internal Investigative Services (ISU), defendants Lieutenant Langford and Sergeant Packard, in front of defendant Captain Johnson, apparently revealing facts as to his unprosecuted criminal activity that were as yet unknown. SAC, p. 44. He told them he was incarcerated under an incorrect birthdate, false name and social security number, and criminal history background and that the information about him in his CDCR central file (C-file) was wrong. Id. at 45. Plaintiff was cautioned that if he was telling the truth he would have to go back to court for his records to be rectified and if he was not, he would receive a serious rules violation report (RVR) for lying and trying to manipulate staff. Id. at 46. Five days later, plaintiff claims that Ms. Michau noted that ISU had confirmed

---

[2] It appears to the undersigned that even a layman could infer that plaintiff was, indeed, acting expressly upon a paranoid delusion in beating his sleeping cellmate senseless.

1  that plaintiff's birthdate and name were incorrect, that he had attended Purdue and was part of an
2  NFL draft and that defendant Johnson said the investigation was in the hands of the ISU sergeant
3  and lieutenant. Id. Clinician Michau, according to plaintiff, indicated that she had shared his
4  history with colleagues so that he could receive an appropriate mental diagnosis. Id. at 47. After
5  a subsequent interview with defendant Associate Warden Butler, wherein plaintiff claims
6  defendant Butler told him that plaintiff's having sneaked into prison was causing embarrassment
7  at CDCR headquarters, and a follow-up interview with the ISU defendants resulted in no
8  information, plaintiff concluded that the ISU was involved in a cover-up because plaintiff had
9  confessed to a murder on state property but it had not been referred for investigation to the proper
10 authorities.[3]

11          Plaintiff goes on, page after page, detailing his various encounters with a number
12 of psychiatrists and psychologists, some of whom treated him for depression and others for a
13 delusional disorder and also describing frustrating encounters with prison officials who refuse to
14 correct information in his records. SAC, pp. 49-72. He describes going on a hunger strike in his
15 frustration about not having his actual identity acknowledged and his CDCR records corrected.
16 Id. He appears to be without a cellmate because he has threatened to kill anyone who is housed
17 with him. Id. He complains, for example, that defendant Counselor O'Brian has demanded
18 documentation verifying his claims and that she has rejected the documentation he has presented,
19 claiming that a child could have fabricated such information, stating that as plaintiff had come to
20 prison under a false name, that is the name under which plaintiff could do his time. Id. at 60.
21 Plaintiff claims to be continually tormented by prison officials not correcting his allegedly
22 fraudulent CDCR records.

23          In Hernandez v. Johnston, 833 F.2d 1316, 1318-19 (9th Cir. 1987), the Ninth

---

[3] Plaintiff continues to claim the unsolved murder occurred on California State University property at Dominguez Hills in Carson, California, where the body remains allegedly buried. SAC, p. 49.

1 Circuit found that Washington state law provided a limited liberty interest in accurate prison
2 records and expressly did not reach the question of whether there existed an independent federal
3 due process right.  The Supreme Court subsequently ruled that state regulations give rise to a
4 liberty interest protected by the Due Process Clause of the federal constitution only if those
5 regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on
6 the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472,
7 484, 115 S. Ct. 2293, 2300 (1995).

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington [v. Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, supra.

In, Alvarez v. Horel. 2009 WL 1370895 *3 (N.D. Cal. 2009), the Northern District found that "[p]laintiff's claim of false information in his central file is not actionable."

> Because California has created regulations from which a protected interest in accurate personal information records could arise, a court must ask (1) whether the regulations creating the right to accurate personal information records narrowly restrict the power of prison officials to deprive inmates of accurate records, and (2) whether the deprivation suffered due to the denial of accurate records is one of "real substance."  See Sandin, 515 U.S. at 477-87.
>
> California Code of Regulations title 15, section 3450 allows inmates to inspect personal records and to request amendment to correct outdated, inaccurate or incomplete information.  If a request to correct information is denied, the inmate may have a statement of disagreement placed in the record or file.  See id. § 3450(c). These regulations do not contain substantive predicates or mandatory language requiring any specific outcome when a determination on a request to amend personal information in a prisoner's file is made.  The regulations state no criteria, for

> example, which must be found before an inmate's request will be granted or denied. A provision that merely provides procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461-62, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir.1993). Because the statutory language does not meet the first prong of the *Sandin* test, no protected liberty interest requiring constitutional protection is created. Therefore, Plaintiff's claim against Defendants ... is DISMISSED with prejudice ...for failure to identify a federal constitutional claim.

Alvarez v. Horel. 2009 WL 1370895 *4.

The Sandin Court determined that due process could be implicated if a prisoner could demonstrate that the state action at issue would "inevitably affect the duration of his sentence." 515 U.S. 472, 487, 115 S.Ct. 2293 (1995). Thus, as noted in Morales v. Rubia, 2009 WL 2474743 *7 (E.D. Cal. 2009), like this one, an Eastern District of California case, "[t]he applicable standard ... is therefore whether "the false information will inevitably lengthen the duration of the inmate's incarceration," quoting Rio v. Schwarzenegger, 2009 WL 1657438 (C.D.Cal. 2009) (discussing the existence of a liberty interest implicating the Due Process Clause pre- and post- Sandin).[4] Oddly, in this case, it appears that what plaintiff wants would bring about the opposite. If plaintiff is able to have his records corrected in the manner he appears to adamantly seek, he is most likely, among other things, to be prosecuted for what he maintains is an unsolved murder he has confessed to committing. In this instance therefore, far from inevitably leading to a lengthening of plaintiff's confinement, the refusal of prison officials to correct his record to include damaging, if accurate, information as he would wish would actually appear to be doing the opposite, while it is what plaintiff purports to seek that would almost inevitably lengthen his period of incarceration. Plaintiff's claims regarding a due process violation arising from false information in his CDCR files must be dismissed with prejudice.

As to any claim for an Eighth Amendment violation for a failure to protect,

---

[4] The Report and Recommendation in Morales was adopted by Order, in Case No. 2:07-CV-00826 RSL JLW, filed on September 18, 2009.

8

1  plaintiff fails to articulate such a claim. "'[P]rison officials have a duty...to protect prisoners
2  from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct.
3  1970, 1976 (1994). "[A] prison official violates the Eighth Amendment when two requirements
4  are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'.... For a claim
5  (like the one here) based on a failure to prevent harm, the inmate must show that he is
6  incarcerated under conditions posing a substantial risk of serious harm." Id. at 834, 114 S.Ct. at
7  1977. Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must
8  have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate
9  indifference' to inmate health or safety." Id. The prison official will be liable only if "the
10 official knows of and disregards an excessive risk to inmate health and safety; the official must
11 both be aware of facts from which the inference could be drawn that a substantial risk of serious
12 harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. at 1979.

13         In this case, it is plaintiff who appears to pose a risk to other inmates, in
14 particular, any cellmate. Plaintiff does not have standing to assert any claim against a prison
15 official for failing to protect other prisoners from himself. Halet v. Wend Inv. Co., 672 F.2d
16 1305, 1308 (9th Cir. 1982) (party must assert [his] own rights not those of third parties), citing
17 Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634
18 (1978); Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1974). Plaintiff simply does
19 not frame a claim that somehow prison officials failure to alter his prison records in this context
20 puts him at risk. This claim will be dismissed with prejudice.

21         Finally, plaintiff does not frame a claim for inadequate medical care in violation
22 of the Eighth Amendment based on his claim of his mental condition being misdiagnosed by a
23 number of psychiatrists or psychologists. As plaintiff has been previously informed, to state a §
24 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff
25 must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious
26 medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail,

plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received,

11

expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).

In this case, plaintiff, at most, alleges a mere difference of opinion concerning what mental condition he may suffer from, a point upon which he himself appears to be somewhat confused and the appropriate treatment for any mental condition. That cannot serve as a basis for a claim of deliberate indifference to a serious medical condition in violation of the Eighth Amendment and his claims regarding the diagnosis and treatment of his mental condition will be dismissed with prejudice.

"Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). See also, Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing Doe v. United States, 58 F.3d 494, 497(9th Cir.1995) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts."). "[A] district court retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to amend." Lopez v. Smith, 203 F.3d at 1124. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Metzler Inv. GMBH v. Corinthian Colleges, Inc. 540 F.3d 1049, 1072 (9th Cir. 2008), quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003).

Request for Appointment of Counsel

Plaintiff has requested the appointment of counsel. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991);

Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). In the present case not only does the court not find the required exceptional circumstances, but in light of this court's determination that this action should be dismissed with prejudice, plaintiff's motions for the appointment of counsel will be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. The fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's November 18, 2010 (docket # 7) and November 23, 2010 (docket # 9) motions for the appointment of counsel are denied.

4. The first amended complaint, filed on November 18, 2010 (docket # 6) has been superseded by the further amended complaint, filed on November 23, 2010 (docket # 10);

5. The Clerk of the Court is to designate the amended complaint at docket # 10 as the second amended complaint;

6. The second amended complaint is dismissed with prejudice and this case is closed.

DATED: February 3, 2011

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE